UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

MIGUEL GABRIEL RAFAEL MARTINEZ,

Plaintiff,

v.

LIEUTENANT SHANNON TAYLOR, CASSIA COUNTY SHERIFF'S DEPARTMENT, STAFF SERGEANT CROCKETT, SUMMIT FOODS, and MINIDOKA COUNTY,

Defendants.

Case No. 4:26-CV-00339-DCN

**INITIAL REVIEW ORDER**

The Court now reviews the Complaint of Plaintiff Miguel Martinez to determine whether it or any of the claims contained therein should be summarily dismissed under 28 U.S.C. §§ 1915 and 1915A. Having reviewed Plaintiff's filings, the Court enters the following Order permitting Plaintiff to proceed in part.

## REVIEW OF COMPLAINT

### 1. Factual Allegations

At the time of the alleged constitutional violations, Plaintiff was a pretrial detainee in custody of the Mini-Cassia County Judicial Center ("MCCJC"). He sues jail staff, the contracted food company, and the counties for (1) failure to serve proper kosher meals because pans and utensils for kosher and non-kosher foods are used near or with each other

in the jail kitchen; (2) failure to provide sufficient calories in his diet; (3) providing him with only one, not two, hot meals a day (the other meals are cold); and (4) failure to notify him in advance that matzo for Passover meals must be ordered at least six weeks in advance.

Plaintiff brings First and Fourteenth Amendment claims under 42 U.S.C. § 1983, the federal civil rights statute. Plaintiffs also assert violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*.

Plaintiff seeks monetary and injunctive relief, but he is no longer incarcerated at the jail; thus, his injunctive relief claims are moot.

**2. Standard of Law for Summary Dismissal**

The Court is required to review complaints filed in forma pauperis, or complaints filed by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity, to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(d)(2) & 1915A(b).

A complaint fails to state a claim for relief under Rule 8 of the Federal Rules of Civil Procedure if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not require detailed factual

allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," the complaint has not stated a claim for relief that is plausible on its face. *Id.* (internal quotation marks omitted).

To state a valid claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by the conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

**3. First Amendment Free Exercise Claims**

**A. *Standards of Law***

The First Amendment Free Exercise Clause—applicable to the States through the Fourteenth Amendment's Due Process Clause—absolutely protects the right to believe in a religion. It does not, however, absolutely protect all conduct associated with a religion. *Cantwell v. Connecticut*, 310 U.S. 296, 303-04 (1940). Inmates retain their free exercise of religion rights in prison. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).

To serve as a basis for a viable claim challenging a prison restriction under the Free Exercise Clause, an inmate's belief must be both sincerely held and rooted in religious belief. *Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008); *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994). However, *de minimis*—or minor—burdens on the free exercise of religion are not of a constitutional dimension, even if the belief upon which the exercise is based is sincerely held and rooted in religious belief. *See, e.g.*, *Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999) (the unavailability of a non-pork tray for inmate at 3 meals

out of 810 does not constitute more than a *de minimis* burden on inmate's free exercise of religion).

A prison's occasional failure to accommodate a religious practice does not violate the Free Exercise Clause where there is no evidence that the failures were caused by "anything other than institutional shortage." *Id.* Similarly, a temporary delay in accommodating religious practice does not violate the First Amendment when caused by ordinary administrative or institutional delay. *See Tapp v. Stanley*, 2008 WL 4934592, at *7 (W.D.N.Y. Nov. 17, 2008) (unpublished) (holding that a 3-month delay in providing a prisoner with a religious meal did not substantially burden the prisoner's sincerely-held religious beliefs where the delay was "caused by ordinary administrative delay").

Challenges to prison restrictions that are alleged "to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law." *Jones v. N.C. Prisoners' Union*, 433 U.S. 119, 125 (1977) (citation omitted). What constitutes a reasonable opportunity for religious exercise, therefore, must be evaluated within the context of a prison's need for security, among other legitimate goals. *O'Lone*, 482 U.S. at 350-53 (1987) (holding that a prison's policy of not allowing Muslim inmates on work detail to return to the prison to attend Jumu'ah, a group worship service, did not violate the Constitution).

As long as a restriction on an inmate's religious practice "is reasonably related to legitimate penological interests," that restriction is valid. *Turner v. Safley*, 482 U.S. 78, 89 (1987). Factors to be considered in this reasonableness inquiry include (1) whether there is

a logical connection between the governmental interest and the particular policy or decision at issue; (2) whether "alternative means of exercising the right remain open to prison inmates"; (3) the impact that accommodating a prisoner's religious practice would have on "other inmates, on prison personnel, and on allocation of prison resources generally," *O'Lone*, 482 U.S. at 350-52 (internal quotation marks and alterations omitted); and (4) whether there is an absence of ready alternatives, which constitutes "evidence of the reasonableness of a prison regulation," *Turner*, 582 U.S. at 90.

**B. *Discussion***

Plaintiff's assertions that the jail has some frozen certified kosher meals in its freezer but chooses instead to make kosher meals to serve to Jewish inmates does not state a claim. Just because some frozen kosher meals are available does not mean they have to be served. It is unknown whether the frozen kosher meals are expired, whether there are not a sufficient number left to serve all Jewish inmates, or whether they are being saved for emergencies. The decision to offer in-house meals instead of likely more expensive prepared meals is reasonably related to the legitimate penological purpose of meeting and maintaining each prisoner's nutritional needs in an economical way. Similarly, there is no constitutional right to have a certain number of hot meals per day or week in jail.

Plaintiff's allegations that the in-house kosher meals were not made according to correct kosher methods, including mixing of utensils between kosher and non-kosher diets, states a claim upon which he can proceed.

Plaintiff complains that he was not able to fully participate in Passover because the jail failed to tell him in advance that he must order matzo at least 6 weeks in advance. There

are no allegations that an intentional deprivation of matzo to thwart Plaintiff's religious practice occurred; rather, this is a claim for mere negligence. "[I]solated acts of negligence" in providing a prisoner with a religious diet are simply insufficient to establish a free exercise claim. *Gallagher v. Shelton*, 587 F.3d 1063, 1070 (10th Cir. 2009). This claim falls into the category of institutional administrative issues that happen from time to time that do not amount to a constitutional violation. *See Tapp v. Stanley*, *supra*.

**4. RLUIPA Claims**

**A. *Standards of Law***

The RLUIPA provides, "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person[] (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). RLUIPA applies to entities receiving federal financial assistance. *Id*. at (b)(1). By accepting federal funds, however, states do not waive sovereign immunity to suits for money damages under RLUIPA. *Sossamon v. Texas*, 131 S. Ct. 1651, 1655 (2011). Further, although the statute provides for injunctive relief, RLUIPA does not allow for monetary damages against individuals. *Wood v. Yordy*, 753 F.3d 899, 902-04 (9th Cir. 2014); *see also Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015) ("RLUIPA does not authorize suits for damages against state officials in their individual capacities because individual state officials are not recipients of federal funding

and nothing in the statute suggests any congressional intent to hold them individually liable.”).

**B. *Discussion***

Plaintiff no longer resides at the jail. Therefore, because RLUIPA authorizes only injunctive relief, he may not proceed on this claim.

**5. Policy-Based Claims**

**A. *Standard of Law***

To proceed on claims against the Cassia County Sheriff’s Department, Minidoka County, and Summitt Foods, Plaintiff must state additional factual allegations. A county, municipality (city), or other local governmental entity, or a private entity may be considered a “person” that can be sued under § 1983 if the claim alleges that a government policy or custom inflicted the injury of which a plaintiff complains. *Monell v. Dept. of Soc. Serv. of New York*, 436 U.S. 658, 694 (1978). To proceed on such a claim, the plaintiff must state facts in the complaint alleging the following: (1) the plaintiff was deprived of a constitutional right; (2) the county had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff’s constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino County, Dep’t of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001) (internal citations and punctuation omitted)). In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court clarified that a complaint must state plausible facts suggesting not simply that Defendants had a policy, but that the policy was adopted *for an unconstitutional purpose*, for example,

discriminating against someone on the basis of their race, religion, or national origin. *Id*. at 682.

A plaintiff may also establish liability of a local governmental entity or private entity performing a state function by demonstrating that the alleged constitutional violation was caused by a failure to train its employees adequately. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-91 (1989); *Bd. of County Comm's v. Brown*, 520 U.S. 397, 409-10 (1997) (discussing limited scope of such a claim). To proceed on such a claim, the plaintiff must state facts in the complaint alleging the following: (1) the training program must be inadequate "in relation to the tasks the particular officers must perform"; (2) the officials must have been deliberately indifferent "to the rights of persons with whom the [officials] come into contact"; and (3) the inadequacy of the training "must be shown to have 'actually caused' the constitutional deprivation at issue." *Merritt v. County of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989) (internal citations and punctuation omitted).

**B. *Discussion***

Plaintiff has provided the declaration of another inmate, Dylan J. Nielson, who states that Summit Foods Workers Randy Box and "Will" violated kosher food preparation and serving requirement in the jail kitchen in October, November, and December of 2024. Plaintiff has not stated sufficient facts to show that these two workers acted in this manner as a result of a policy, custom, or lack of training, rather than their own decisionmaking or negligence. At this time, Plaintiff may not proceed against these Defendants, but, if he discovers additional facts showing that he can state a policy-based claim, he may submit

an amendment. Plaintiff may proceed against Staff Sergeant Crockett only, who appeared to respond to one of Plaintiff's grievances addressing the shared utensil issue.

## CONCLUSION

Plaintiff may proceed on his claims against Staff Sergeant Crockett that the jail did not prepare kosher meals in accordance with kosher requirements under the First Amendment. H may not proceed under RLUIPA. Plaintiff has not stated sufficient facts to show that the jail did not provide proper nutrition to inmates requesting a kosher diet. There is no federal cause of action based on a jail serving more cold than hot meals to inmates. Plaintiff may not proceed on claims that the jail failed to serve Jewish inmates frozen kosher meals an inmate saw in the freezer. Plaintiff may not proceed on claims that he was deprived of matzo for Passover one time because of a lack of jail/inmate communication about the need for inmates to order matzo for Passover six weeks in advance.

## ORDER

**IT IS ORDERED:**

1. Plaintiff may proceed on the First Amendment non-kosher food preparation of religious diet claim against Defendant Staff Sergeant Crockett. The remainder of the claims and defendants are dismissed without prejudice, and the Clerk of Court may terminate the other defendants on the docket.

2. Defendant will be allowed to waive service of summons by executing, or having their counsel execute, the Waiver of Service of Summons as provided by Fed. R. Civ. P. 4(d) and returning it to the Court within 30 days. If Defendants choose to return the Waiver of Service of

Summons, the answer or pre-answer motion will be due in accordance with Rule 12(a)(1)(A)(ii). Accordingly, the Clerk of Court will forward a copy of the Complaint (Dkt. 3), a copy of this Order, and a Waiver of Service of Summons to the following counsel:

McCord Larsen
Cassia County Prosecutor
P.O. Box 7
Burley, Idaho 83318.

3. Should any entity determine that the individuals for whom counsel for the entity was served with a waiver are not, in fact, its employees or former employees, or that its attorney will not be appearing for the entity or for particular former employees, it should file a notice within the CM/ECF system, with a copy mailed to Plaintiff, indicating which individuals for whom service will not be waived.

4. If Plaintiff receives a notice from Defendants indicating that service will not be waived for an entity or certain individuals, Plaintiff will have an additional 90 days from the date of such notice to file a notice of physical service addresses of the remaining Defendants, or claims against them will be dismissed without prejudice without further notice.

5. The parties must follow the deadlines and guidelines in the Standard Disclosure and Discovery Order for Pro Se Prisoner Civil Rights Cases, issued with this Order.

6. Any amended pleadings must be submitted, along with a motion to amend, within 150 days after entry of this Order.

7. Dispositive motions must be filed no later than 300 days after entry of this Order.

8. Each party must ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party must sign and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made.

9. The Court will not consider ex parte requests unless a motion may be heard ex parte according to the rules and the motion is clearly identified as requesting an ex parte order, pursuant to Local Rule of Civil Practice before the United States District Court for the District of Idaho 7.2. ("Ex parte" means that a party has provided a document to the court, but that the party did not provide a copy of the document to the other party to the litigation.)

10. All Court filings requesting relief or requesting that the Court make a ruling or take an action of any kind must be in the form of a pleading or motion, with an appropriate caption designating the name of the pleading or motion, served on all parties to the litigation, pursuant to

Federal Rule of Civil Procedure 7, 10 and 11, and Local Rules of Civil Practice before the United States District Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

11. No party may have more than three pending motions before the Court at one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter currently pending before the Court. Motions submitted in violation of this Order may be stricken, summarily denied, or returned to the moving party unfiled.

12. Plaintiff must notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

13. Pursuant to General Order 324, this action is hereby returned to the Clerk of Court for random civil case assignment to a presiding judge, on the proportionate basis previously determined by the District Judges, having given due consideration to the existing caseload.

DATED: September 23, 2026

David C. Nye
U.S. District Court Judge